# No. 25-40508

# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

---

Amberley Lambert, Individually and as next friend of K.M. and N.M., minors,

Plaintiff - Appellant

v.

City of Onalaska, Texas; Tammie Heeth, Officer,

Defendants - Appellees

---

## On Appeal from
United States District Court for the Eastern District of Texas

9:23-CV-67

---

## BRIEF OF APPELLANT AMBERLEY LAMBERT

SUBMITTED BY:

Brandon Grable
Grable, P.L.L.C.
12451 Starcrest Drive
San Antonio, TX 78216

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th CIR Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| **Appellees:** | **Counsel for Appellees:** |
|---|---|
| City of Onalaska, Texas | Erika Neill of Law Office of Erika L. Neill, P.L.L.C. Lufkin, TX |
| Tammie Heeth | Erika Neill of Law Office of Erika L. Neill, P.L.L.C. Lufkin, TX |

| **Appellants:** | **Counsel for Appellants:** |
|---|---|
| Amberley Lambert | Brandon Grable of Grable, P.L.L.C. San Antonio, TX |

S/Brandon Grable
Attorney of record for
Appellant Amberly Lambert

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Fifth Circuit Rule 28.2.3, Appellant respectfully requests oral argument. This appeal presents substantial constitutional questions regarding First Amendment retaliation and Fourth Amendment seizures involving the proper application of *Nieves v. Bartlett*, 587 U.S. 391 (2019, as clarified by *Gonzalez v. Trevino*, 602 U.S. 653 (2024) and *Tolan v. Cotton*, 572 U.S. 650 (2014). Oral argument would assist the Court in addressing recurring issues regarding summary judgment standards in civil rights cases.

# TABLE OF CONTENTS

Contents

CERTIFICATE OF INTERESTED PERSONS ....................................................... iii

STATEMENT REGARDING ORAL ARGUMENT ............................................. iv

TABLE OF CONTENTS ..................................................................................... v

TABLE OF AUTHORITIES ................................................................................ 1

JURISDICTIONAL STATEMENT ..................................................................... 3

STATEMENT OF THE ISSUES .......................................................................... 4

STATEMENT OF THE CASE .............................................................................. 5

SUMMARY OF THE ARGUMENT .................................................................... 10

ARGUMENT ....................................................................................................... 12

I.    Standard of Review ................................................................................ 12

II.   The District Court Violated *Tolan v. Cotton* by Failing to View Evidence in the Light Most Favorable to Lambert and by Improperly Resolving Disputed Material Facts ................................................................................... 13

A.    The Supreme Court's Admonition in *Tolan v. Cotton* ............................ 13

B.    The District Court Committed *Tolan* Errors Throughout Its Analysis ...... 14

C.    Lambert's Acquittal Supports Her Version of Events ............................ 20

D.    Officer Heeth's Trial Testimony Contains Material Contradictions that Create Genuine Issues for Trial.............................................................21

E.    This Court Has Consistently Reversed District Courts for Similar *Tolan* Errors                                                                                                    29

III.    The District Court Erred in Granting Summary Judgment on Lambert's First Amendment Retaliation Claim Where She Presented Compelling Objective Evidence of Selective Enforcement......................................................30

   **A.    Legal Framework for First Amendment Retaliation Claims** ........30

   **B.    *Gonzalez v. Trevino* Clarified and Broadened the Nieves Exception**..................................................................................31

   **C.    Lambert Presented Exceptionally Strong Comparator Evidence Under *Gonzalez*** ........................................................................32

   **D.    The Temporal Proximity Strengthens the Inference of Retaliation** 33

   **E.    The Chilling Effect Is Obvious** ...........................................34

   **F.    The Nieves Exception Applies Even if Probable Cause Existed** .....34

IV.    The District Court Erred in Granting Summary Judgment on Lambert's Fourth Amendment Claim.............................................................35

CONCLUSION ......................................................................................63

CERTIFICATE OF SERVICE ...............................................................65

CERTIFICATE OF COMPLIANCE .......................................................66

# TABLE OF AUTHORITIES

Cases

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970) .............................................. 13

*Arnold v. Williams*, 979 F.3d 262 (5th Cir. 2020) ............................................. 37

*Brosseau v. Haugen*, 543 U.S. 194 (2004) ......................................................... 58

*California v. Hodari D.*, 499 U.S. 621 (1991) ..................................................... 38

*Cass v. City of Abilene*, 814 F.3d 721 (5th Cir. 2016) .................................... 18, 33

*Chandler v. Miller*, 520 U.S. 305 (1997) ........................................................... 42

*City of Indianapolis v. Edmond*, 531 U.S. 32 (2000) .......................................... 42

*City of Los Angeles v. Heller*, 475 U.S. 796 (1986) ............................................. 62

*Clark v. Resistoflex Co.*, 854 F.2d 762 (5th Cir. 1988) ....................................... 17

*Delaware v. Prouse*, 440 U.S. 648 (1979) ........................................................... 42

*Deville v. Marcantel*, 567 F.3d 156 (5th Cir. 2009) ............................................ 29

*Deville v. Marcantel,* 567 F.3d 156 (5th Cir. 2009)............................................. 28

*Freeman v. Gore*, 483 F.3d 404 (5th Cir. 2007)................................................... 12

Gonzalez v. Trevino, 602 U.S. 653 (2024) .................................................... 11, 31

*Graham v. Connor*, 490 U.S. 386 (1989)..................................................... passim

*Haggerty v. Tex. S. Univ.*, 391 F.3d 653 (5th Cir. 2004) ............................... 12, 21

*Hanks v. Rogers*, 853 F.3d 738 (5th Cir. 2017) .................................................. 59

*Harris v. Serpas*, 745 F.3d 767 (5th Cir. 2014)................................................... 18

*Hope v. Pelzer*, 536 U.S. 730 (2002) ................................................................. 60

*Keenan v. Tejeda*, 290 F.3d 252 (5th Cir. 2002)................................................. 30

*Kennett-Murray Corp. v. Bone*, 622 F.2d 887 (5th Cir. 1980) ............................. 16

*Lytle v. Bexar County*, 560 F.3d  (5th Cir. 2009)........................................... 47, 51

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) ......................................... 6, 62

*Nieves v. Bartlett* 587 U.S. 391 (2019)...................................................... passim

*Pearson v. Callahan*, 555 U.S. 223 (2009) ........................................................ 58

*Ramirez v. Martinez*, 716 F.3d 369 (5th Cir. 2013) ............................................ 50

*Rockwell v. Brown*, 664 F.3d 985 (5th Cir. 2011)............................................... 47

*Sauceda v. City of San Benito* ..................................................................... 11, 35

*Scott v. Harris 550 U.S. 372 (2007)* ....................................................... 18, 19, 56

*Tarver v. City of Edna*, 410 F.3d 745 (5th Cir. 2005) ......................................... 17

*Tennessee v. Garner*, 471 U.S. 1 (1985) ........................................................... 42

*Tennessee v. Garner*, 471 U.S. at 11................................................................ 58

*Terry v. Ohio*, 392 U.S. (1968)........................................................................ 58

*Tolan v. Cotton*, 572 U.S. 650 (2014)......................................................... passim

*Torres v. Madrid*, 592 U.S. 306 (2021) ....................................................... 36, 38

*Winzer v. Kaufman County* 916 F.3d 464 (5th Cir. 2019) ........................ 16, 18, 19

*Young v. Bd. of Supervisors*, 927 F.3d 898 (5th Cir. 2019)...................................62
*Zarnow v. City of Wichita Falls*, 614 F.3d 161 (5th Cir. 2009) ............................62

Statutes

28 U.S.C. § 1291.................................................................................................3
28 U.S.C. § 1331.................................................................................................3
28 U.S.C. § 1343.................................................................................................3
42 U.S.C. § 1983.................................................................................................5
TEX. PENAL CODE § 9.31(b)(1)(B) .................................................................50

## JURISDICTIONAL STATEMENT

The district court had jurisdiction over Appellant's claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343. On July 18, 2025 the district court entered final judgment in favor of Defendant-Appellees on all claims. Appellant timely filed her Notice of Appeal on August 13,2025. This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1. Whether the district court erred by failing to view the evidence in the light most favorable to Appellant, improperly resolving disputed material facts, and failing to draw reasonable inferences in her favor, in violation of *Tolan v. Cotton*, 572 U.S. 650 (2014).

2. Whether the district court erred in granting summary judgment on Appellant's First Amendment retaliation claim where she presented compelling objective evidence of selective enforcement satisfying the *Nieves v. Bartlett* exception, specifically that Officer Heeth never arrested, cited, or even warned anyone else for the alleged violation, but arrested Appellant two days after she filed a formal complaint against Officer Heeth.

3. Whether the district court erred in granting summary judgment on Appellant's Fourth Amendment unlawful seizure claim where: (a) no probable cause existed because any alleged assault occurred only after Officer Heeth initiated an unlawful seizure; and (b) alternatively, even if probable cause existed, the manner of executing the seizure was objectively unreasonable under *Graham v. Connor*, 490 U.S. 386 (1989), given the minor traffic infraction, the presence of young children in the vehicle, and Officer Heeth creating danger by attempting forcible extraction from a vehicle still in drive.

**STATEMENT OF THE CASE**

## I.    NATURE OF THE CASE

This is a civil rights action brought pursuant to 42 U.S.C. § 1983 arising from Officer Tammie Heeth's arrest of Amberley Lambert at her children's elementary school. Lambert, a mother of two young children, filed a formal complaint against Officer Heeth with the school's assistant principal on March 30, 2021, expressing concerns about Officer Heeth's conduct as the school resource officer. Two days later, on April 1, 2021, Officer Heeth arrested Lambert during morning school drop-off for allegedly disregarding traffic directions. **ROA.406**.

The arrest occurred in front of Lambert's young children, who were seated in the backseat of her vehicle. During the arrest, Officer Heeth admitted that she climbed on Lambert's vehicle's running board, reached into the car while it was in drive, opened the door, and attempted to forcibly remove Lambert from the car, which started moving because Heeth pulled Lambert's body away from the brakes. **ROA.533, 559-563**. Officer Heeth admitted in discovery that Lambert is the only person she has ever arrested for disregarding the school drop-off route, that she has never given anyone a written warning for this violation, and that she has

5

never issued a citation for this violation. **ROA.661-662**. Lambert was acquitted of all charges at trial.

## II.    PROCEDURAL HISTORY

Lambert filed her pro se complaint on April 3, 2023, the last day of the statute of limitations. After retaining counsel, Lambert filed an amended complaint asserting claims for First Amendment retaliation, Fourth Amendment unreasonable seizure, and municipal liability under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) **ROA. 78-105**

Following discovery, Defendant-Appellees moved for summary judgment on all claims, asserting qualified immunity. Lambert filed a comprehensive response with extensive citations to the record. **ROA.402-436.**

Magistrate Judge Christine L. Stetson issued a Report and Recommendation recommending that summary judgment be granted on all claims. **ROA.1161-1193**. Lambert filed objections. **ROA.1200-1213**. The district court adopted the Report and Recommendation, granted summary judgment in favor of Defendant-Appellees on all claims, and dismissed Lambert's complaint with prejudice. **ROA.1220-1232**. The court found that Officer Heeth was entitled to qualified immunity on both

the First Amendment retaliation claim and the Fourth Amendment claim. The court did not address the municipal liability claims. Lambert timely filed her Notice of Appeal. **ROA.1234**.

### III.   FACTS RELEVANT TO THE ISSUES PRESENTED

### A. Background and Prior Complaints

Officer Tammie Heeth served as the school resource officer at Onalaska Elementary School in Onalaska, Texas, where Amberley Lambert's two young children attended school. **ROA.82**. Prior to the events giving rise to this lawsuit, Lambert and Officer Heeth had several negative interactions. Officer Heeth admitted in her deposition that she was aware Lambert had complained about her and that they had not had good interactions. **ROA.147, 34-35**.

### B. The March 30, 2021 Formal Complaint

On March 30, 2021, Lambert went to the school to make a formal complaint about Officer Heeth to Assistant Principal Grubbs. Lambert testified that she explicitly went to file a formal complaint, not merely to share concerns. **ROA.85-86**. Officer Heeth confirmed in her deposition that she was aware of Lambert's complaint prior to the April 1 incident. **ROA.459**.

## C. The April 1, 2021 Arrest

Two days after filing her complaint, on April 1, 2021, Lambert was dropping her children off at school during the morning drop-off period. Lambert's two young children were seated in the backseat of her vehicle. **ROA.86**. According to Lambert's testimony, Officer Heeth gave her a hand signal that Lambert did not understand. **ROA.494**. Lambert attempted to proceed in the drop-off line, believing she was following proper procedures.

Officer Heeth then approached Lambert's vehicle. Officer Heeth admitted in her deposition that she:

- Climbed onto Lambert's vehicle's running board while the vehicle was in drive;

- Reached into the vehicle while it was in drive;

- Opened Lambert's door while the vehicle was in drive; and

- Attempted to forcibly remove Lambert from the vehicle while it was still in drive.

**ROA.1095-1097**. Lambert's young children were in the backseat during these events.

8

Lambert's foot slipped off the brake pedal while Officer Heeth was grabbing her hair and physically pulling her from her seat. **ROA.495-496, 532-533**. Defendant-Appellees admitted that Officer Heeth did not suffer serious bodily injury. **ROA.29-30,1098**. Officer Heeth continued working that day and worked a ball game that same evening. **ROA.420**.

Lambert was arrested and charged with assault on a public servant. She was acquitted of all charges at trial. **ROA451-454**.

### D. Officer Heeth's Enforcement History

During discovery, Officer Heeth testified under oath that:

- She has never given a parent or guardian a written warning for disregarding the school drop-off route. **ROA.1099**.

- She has never given a parent or guardian a citation for disregarding the school drop-off route. **ROA.1099**.

- Lambert is the only individual she has ever arrested for disregarding the school drop-off route. **ROA.1100**.

- She had discretion in allowing certain vehicles to proceed even after the cutoff time. **ROA.1089**.

During Officer Heeth's tenure as school resource officer, no other parent or guardian received a warning, citation, or arrest for disregarding the school drop-off procedures.

## SUMMARY OF THE ARGUMENT

The district court committed three fundamental errors that require reversal of its summary judgment order.

**First**, the district court violated the bedrock principle of *Tolan v. Cotton* by failing to view the evidence in the light most favorable to Lambert and by improperly resolving disputed facts in favor of Defendant-Appellees. Where Lambert testified that her vehicle moved only after Officer Heeth struck it, and where Lambert was acquitted of all criminal charges, the district court had no authority to credit Defendant-Appellees' version of events or to weigh the evidence. This Court has repeatedly reversed district courts for committing precisely this type of error.

**Second**, Lambert presented compelling objective evidence satisfying the *Nieves v. Bartlett* exception to the probable cause requirement in retaliatory arrest cases. Officer Heeth admitted under oath that Lambert is the only person she ever arrested for this violation,

that she never even warned anyone else, and that she arrested Lambert just two days after Lambert filed a formal complaint against her. Under *Gonzalez v. Trevino* , which rejected the Fifth Circuit's prior narrow interpretation of *Nieves*, this objective evidence of selective enforcement creates a genuine issue of material fact precluding summary judgment.

**Third**, even if probable cause existed for the initial stop, the district court erred in granting summary judgment on the Fourth Amendment claim because: (a) under *Sauceda v. City of San Benito*, any alleged assault occurred only after Officer Heeth initiated an unlawful seizure, negating probable cause; and (b) under *Graham v. Connor*, the manner of executing the seizure was objectively unreasonable. Officer Heeth created substantial danger by climbing onto Lambert's stopped vehicle, reaching inside while it was in drive, grabbing Lambert by the hair and pulling her up causing her foot to come off the brake pedal, and attempting to forcibly extract her in front of her young children—all for a minor traffic infraction that never warranted more than a warning.

**ARGUMENT**

## I.   STANDARD OF REVIEW

This Court reviews de novo the district court's grant of summary judgment on qualified immunity grounds. *Freeman v. Gore*, 483 F.3d 404, 409 (5th Cir. 2007). On appeal from summary judgment, this Court must view the facts in the light most favorable to the nonmovant and draw all reasonable inferences in that party's favor. *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014). The district court was not permitted to resolve genuine disputes of fact in favor of the party seeking summary judgment. *Id.* at 657.

In qualified immunity cases where the district court found disputed facts, this Court accepts the plaintiff's version of events as true to the extent reflected by proper summary judgment evidence. *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655 (5th Cir. 2004). While this Court cannot review the district court's determination that genuine fact issues exist, it can review whether any factual dispute found is material for summary judgment purposes. *Freeman*, 483 F.3d at 409.

In practical terms, this standard requires the Court to accept Lambert's version of disputed facts as true without weighing evidence or

making credibility determinations, draw all reasonable inferences in Lambert's favor, and reverse if Lambert's version, when credited, shows a constitutional violation.

## II. THE DISTRICT COURT VIOLATED *TOLAN V. COTTON* BY FAILING TO VIEW EVIDENCE IN THE LIGHT MOST FAVORABLE TO LAMBERT AND BY IMPROPERLY RESOLVING DISPUTED MATERIAL FACTS

### A. The Supreme Court's Admonition in *Tolan v. Cotton*

In *Tolan v. Cotton*, the Supreme Court reversed the Fifth Circuit's grant of qualified immunity because the lower courts failed to adhere to fundamental summary judgment principles. 572 U.S. at 657. The Court emphasized that at the summary judgment stage, courts must view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in that party's favor. *Id.* at 656-57 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)).

The *Tolan* Court identified a recurring problem: lower courts resolving disputed facts against plaintiffs in qualified immunity cases. The Court held that when opposing parties tell two different stories, one of which is blatantly contradicted by the record such that no reasonable jury could believe it, a court should not adopt that version of the facts for

13

purposes of ruling on a motion for summary judgment. *Id.* at 657. Critically, however, when the record genuinely supports conflicting narratives, the court must accept the plaintiff's version as true. *Id.*

## B. The District Court Committed *Tolan* Errors Throughout Its Analysis

The district court committed multiple *Tolan* errors that permeate its summary judgment ruling. Each error independently warrants reversal.

**First**, the district court improperly credited the Appellee-Defendants' version of the sequence of events. Lambert testified that she stopped her vehicle when Officer Heeth signaled to her, and that her vehicle only began to move forward after Officer Heeth grabbed her by the hair and physically pulled her, lifting her from her seat and causing her foot to slip off the brake. **ROA.534**. This testimony creates a material factual dispute about whether Lambert committed any traffic violation at all. If credited by a jury, Lambert's testimony would establish that she complied with Officer Heeth's directions and that any movement of her vehicle was involuntary. Yet the district court resolved this factual dispute against Lambert without acknowledging that reasonable minds could differ.

14

**Second**, the district court failed to draw reasonable inferences in Lambert's favor regarding Officer Heeth's motivation. The temporal proximity of the arrest—just two days after Lambert's formal complaint—combined with Officer Heeth's admission that she knew about the complaint, **ROA.223, 226, 1098** permits a reasonable inference of retaliatory motive. The district court was required to draw this inference in Lambert's favor but failed to do so.

**Third**, the district court improperly weighed evidence regarding the reasonableness of Officer Heeth's conduct. The court treated as dispositive Officer Heeth's stated belief that Lambert posed a threat, without considering Lambert's competing evidence that: (a) she was at a complete stop, (b) her children were in the vehicle, (c) Officer Heeth suffered no serious injuries, (d) Officer Heeth continued working that day and evening, and (e) Lambert was ultimately acquitted. **ROA.407, 420, 451-453,533**.

**Fourth,** the district court improperly treated Lambert's statement to Chief Stanton as an admission that contradicted her deposition testimony, rather than recognizing it as a reconcilable statement that at most creates a credibility issue for the jury. In her statement to Chief

15

Stanton shortly after the incident, Lambert said: "There was no malicious behavior, it's not like I intentionally hit her." **ROA.1165**. The Defendant-Appellees characterized this as an admission that contact occurred, and the district court appears to have credited this interpretation in resolving factual disputes against Lambert.

This was error. Lambert's statement to Chief Stanton is entirely reconcilable with her deposition testimony that any vehicle movement was involuntary caused by Officer Heeth grabbing her by the hair and physically pulling her, lifting her from her seat and causing her foot to slip off the brake. **ROA.534**. Lambert's statement emphasized her *lack of intent*, not an admission of contact. When read in context, Lambert was denying that she deliberately struck Officer Heeth, which is consistent with her testimony that any movement was involuntary and not her fault.

This Court's decision in *Winzer v. Kaufman County* directly addresses this type of error. 916 F.3d 464, 472 (5th Cir. 2019). In *Winzer*, the district court disregarded a witness's affidavit under the "sham affidavit doctrine," concluding it contradicted earlier statements. *Id*. This Court held that was an abuse of discretion. *Id*. The Court explained that

16

"not 'every discrepancy' in an affidavit justifies a district court's refusal to give credence to competent summary judgment evidence." *Id.* (quoting *Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 893 (5th Cir. 1980). Rather, "[i]n considering a motion for summary judgment, a district court must consider all the evidence before it and cannot disregard a party's affidavit merely because it conflicts to some degree with an earlier statement." *Id.* Critically, "[i]n light of the jury's role in resolving questions of credibility, a district court should not reject the content of an affidavit even if it is at odds with statements made earlier." *Id.*

The *Winzer* Court further held that the sham affidavit doctrine is inappropriate where statements can be "reconciled" or where "an affidavit supplements, rather than contradicts" an earlier statement. *Id.* at 472-73 (citing *Clark v. Resistoflex Co.*, 854 F.2d 762, 766 (5th Cir. 1988). "At most, [any perceived inconsistency] creates a credibility issue for [the plaintiff's] version of the facts. Such credibility determinations, however, are for the trier of fact, not the district court." *Id.* at 473 (citing *Tarver v. City of Edna*, 410 F.3d 745, 753 (5th Cir. 2005)

Here, Lambert's statement to Chief Stanton and her deposition testimony are easily reconciled: she consistently denied intentionally

17

striking Officer Heeth. Any perceived inconsistency about whether contact occurred is minimal and does not rise to the level of being "so markedly inconsistent" as to constitute an "obvious sham." *Winzer*, 916 F.3d at 472 . Moreover, Lambert's deposition testimony supplements and clarifies her earlier statement by explaining the mechanism of any vehicle movement—Lambert's foot slipped off the brake pedal while Officer Heeth was grabbing her hair and physically pulling her from her seat—an involuntary physiological response to being violently assaulted, not a voluntary criminal act. The district court violated *Tolan* by resolving this factual dispute and making credibility determinations at the summary judgment stage. *See Tolan*, 572 U.S. at 657; *Winzer*, 916 F.3d at 473 .

Moreover, the *Scott v. Harris* exception to *Tolan* does not apply here. In *Scott v. Harris*, the Supreme Court held that courts need not credit a plaintiff's version of events if it is "blatantly contradicted" by video evidence such "that no reasonable jury could believe it." 550 U.S. 372, 380 (2007) This Court has applied that narrow exception only where video evidence directly contradicts the plaintiff's account. *See Harris v. Serpas*, 745 F.3d 767, 771 (5th Cir. 2014) (instructing courts to "view the

facts in the light depicted by the videotape" when video evidence contradicts the nonmovant's version); *Cass v. City of Abilene*, 814 F.3d 721, 727 (5th Cir. 2016) (same).

Here, there is no video evidence whatsoever—no dashcam footage, no bodycam recording, no bystander video. The only evidence the district court could have relied upon to discredit Lambert's deposition testimony was her own post-incident statement to Chief Stanton. **Post-incident statements by a plaintiff do not constitute the type of objective evidence contemplated by *Scott v. Harris*.**

*Scott* involved contemporaneous video capturing the actual events in dispute. 550 U.S. at 378-81 A post-incident oral statement—made under stress, shortly after a traumatic arrest in front of one's children, to the police chief investigating the incident—cannot serve the same function as objective video evidence. *See Winzer*, 916 F.3d at 473

(recognizing that credibility issues must be resolved by the jury, not by the court at summary judgment).

Indeed, post-incident statements are inherently less reliable than contemporaneous recordings because they are subject to memory lapses, stress, misinterpretation, and the pressure of speaking to investigating

19

authorities. As Justice Sotomayor observed in her *Nieves v. Bartlett* dissent, "more than ever before, an audiovisual record of key events is now often obtainable" through body cameras and smartphones, creating reliable contemporaneous evidence. 587 U.S. 391, 428-29 (2019) (Sotomayor, J., dissenting). Where such objective evidence exists, courts may use it. But where—as here—no such evidence exists, courts cannot bootstrap *Scott v. Harris* to disregard plaintiff testimony based solely on allegedly inconsistent post-incident statements. That is precisely the type of credibility determination reserved for the jury.

The district court's apparent reliance on Lambert's *post-incident* statement to Chief Stanton as a basis for discrediting her deposition testimony was therefore doubly erroneous: first, under *Winzer*, because the statements are reconcilable and create at most a credibility issue for the jury; and second, because *Scott v. Harris* provides no basis for using post-incident statements to override a plaintiff's summary judgment testimony.

### C. Lambert's Acquittal Supports Her Version of Events

Lambert's acquittal at trial on all criminal charges provides significant support for her version of events. **ROA 451-454**. A jury that

heard all the evidence, including testimony from Officer Heeth and other witnesses, concluded that Lambert did not assault Officer Heeth. While an acquittal does not conclusively establish the facts for purposes of this civil action, it demonstrates that Lambert's version of events is plausible and was credited by a jury. *See Haggerty*, 391 F.3d at 657 (noting that factual disputes must be resolved in favor of the plaintiff at summary judgment).

The district court's willingness to discount Lambert's testimony despite her acquittal exemplifies the type of improper fact-finding that *Tolan* prohibits. If a criminal jury credited Lambert's account sufficiently to acquit her, this Court must accept her account as true for summary judgment purposes. *See Tolan*, 572 U.S. at 657 (holding that courts must accept the plaintiff's version when the record supports conflicting narratives).

### D. Officer Heeth's Trial Testimony Contains Material Contradictions that Create Genuine Issues for Trial

Officer Heeth's own trial testimony directly contradicts her account in critical respects, impeaches her credibility, and corroborates Lambert's version of events. Under *Winzer* and *Tolan*, these contradictions create

21

genuine disputes of material fact that cannot be resolved on summary judgment.

### 1. Heeth Flatly Denied Pulling Lambert's Hair

Lambert testified under oath that Officer Heeth "grabbed [her] by the hair and tried to forcefully rip [her] through the window." **ROA.498, 532-534**. This was not a passing comment—Lambert's testimony was specific, detailed, and consistent throughout both her deposition and trial testimony. The hair-pulling is central to Lambert's account of how any vehicle movement occurred: she testified that Officer Heeth's pulling her by the hair lifted her from her seat, causing her foot to slip involuntarily off the brake pedal. **ROA.495-498, 532-534**.

When Lambert was cross-examined about Officer Heeth's contrary testimony, the contradiction became explicit:

> Q. *Now, you heard Ms. Heeth's testimony, again, correct?*
>
> A. *Yes.*
>
> Q. *And if I remember correctly, she said, didn't pull your hair, right?*
>
> A. *Correct.*

**ROA.502.**

Officer Heeth's denial that she pulled Lambert's hair is a material contradiction on a dispositive issue. If Officer Heeth did grab Lambert by the hair and pull her with sufficient force to attempt to extract her through the window, then:

    a.  The level of force used was significantly greater than Officer Heeth admits;

    b.  Lambert's testimony that her foot involuntarily slipped off the brake becomes not merely plausible, but the most logical explanation;

    c.  Officer Heeth's claim that Lambert "assaulted" her with the vehicle is undermined, because any vehicle movement would be the direct result of Officer Heeth's own violent actions.

This is precisely the type of credibility determination that must be made by a jury, not resolved by a court on summary judgment.

### 2. Heeth Denied Knowledge of Lambert's Glasses Despite Violent Close-Quarters Struggle

Lambert testified that during Officer Heeth's assault, her glasses were knocked off her face and fell to the floor. **ROA.502**. Lambert cannot see without her glasses. *Id*. Yet when asked about Officer Heeth's trial

23

testimony regarding the glasses, Lambert confirmed that Heeth denied knowing about them. **ROA.502.**

This denial strains credulity. Officer Heeth admits she climbed onto Lambert's vehicle's running board; reached into the vehicle while it was in drive; opened Lambert's door while the vehicle was in drive; attempted to unbuckle Lambert's seatbelt; and tried to forcibly remove Lambert from the vehicle. **ROA.1096-1097**.

If Officer Heeth was in such close physical proximity to Lambert— so close that she was reaching into the vehicle, manipulating Lambert's seatbelt, and attempting to physically extract her—her claim that she has no knowledge Lambert's glasses came off undermines her credibility. This contradiction suggests Officer Heeth is minimizing the force she used and the violence of the encounter. Under *Graham v. Connor*, the reasonableness of force depends on the totality of circumstances, and Officer Heeth's lack of candor about basic facts like Lambert's glasses falling off during the struggle makes her overall account less credible and creates a jury question about whose version of the physical encounter is accurate.

### 3. Heeth's Own Admissions Corroborate Lambert's Account

Despite denying the hair-pulling and claiming ignorance of the glasses, Officer Heeth made devastating admissions that corroborate Lambert's testimony about the violent and dangerous nature of the encounter. Lambert confirmed that Officer Heeth admitted to the following at trial:

**First**, Officer Heeth admitted trying to pull Lambert out of the vehicle while Lambert's seatbelt was still fastened:

> Q.    *But she did say and admit she tried to pull you out of the car while your seatbelt was still on?*
>
> A.    *Correct.*

**ROA.503**.

When asked whether such conduct would be dangerous, Lambert confirmed that even Officer Heeth recognized it was:

> Q    *She also tried to take you out of the car -- or did she -- while your foot was still on the brake and the car was in drive?*
>
> A.    *She was never successful at her attempts.*
>
> Q.    *Do you recall that she testified to the same thing?*
>
> A.    *Yes.*
>
> Q.    *That would've been pretty dangerous, yes?*

A.   *Oh, yes. Absolutely.*

ROA.503.

These admissions are critical. Officer Heeth admits she attempted to forcibly extract a seat-belted driver from a vehicle that was in drive, with the driver's foot on the brake. This is precisely the scenario Lambert describes—and it is precisely the scenario in which a driver's foot would foreseeably and involuntarily slip off the brake when being pulled.

**Second**, Officer Heeth's admissions establish that she created the very danger she now claims justified her actions. Under *Sauceda v. City of San Benito*, 78 F.4th 174 (5th Cir. 2023), an officer cannot initiate an unlawful seizure, provoke a response, and then claim that response justified the initial seizure.

Any vehicle movement that occurred was the direct and foreseeable result of Officer Heeth's decision to attempt a violent extraction under these dangerous conditions. Lambert's testimony that her foot slipped when Officer Heeth pulled her is not only plausible—it is the most logical explanation given Officer Heeth's own admissions.

### 4.  Under *Winzer*, These Contradictions Create Jury Questions

This Court held in *Winzer v. Kaufman County* that district courts cannot disregard testimony merely because it conflicts with other statements. 916 F.3d 464, 472 (5th Cir. 2019).

Here, we have more than mere conflicts in testimony—we have:

a. *Direct contradictions* between Lambert's testimony (Officer Heeth grabbed her hair) and Officer Heeth's testimony (she did not);

b. *Implausible denials* (Officer Heeth claims no knowledge of glasses during a violent close-quarters struggle);

c. *Admissions that corroborate the non-moving party* (Officer Heeth admits attempting to extract a seat-belted driver from a vehicle in drive with the driver's foot on the brake).

These contradictions go to the heart of the case: **Was Lambert the aggressor who deliberately drove at Officer Heeth, or was any vehicle movement an involuntary response to Officer Heeth's violent assault?** Officer Heeth's contradictory testimony and damaging admissions make this a classic jury question.

### 5. The District Court's Failure to Recognize These Jury Questions Violated *Tolan*

27

As mentioned above, *Tolan* admonishes courts that "improperly weigh evidence" to resolve disputes "in favor of the moving party." *Tolan*, 572 U.S. at 657.

Here, the district court weighed evidence in favor of movant to discredit Lambert's story—despite Officer Heeth's own admissions that corroborate Lambert's events. Officer Heeth admitted that she attempted a forcible extraction of a seat-belted driver while the vehicle was in drive with the driver's foot on the brake, and under circumstances she herself described as dangerous.

Given these admissions, Lambert's testimony that her foot involuntarily slipped off the brake when Officer Heeth pulled her is not merely credible—it is the most logical explanation for what occurred. The district court had no authority to reject this testimony or to resolve the credibility contest in Officer Heeth's favor.

Moreover, the contradictions in Officer Heeth's testimony—denying she pulled Lambert's hair, claiming no knowledge of glasses—undermine her credibility and create additional reasons why a jury must resolve these disputes. As this Court noted in *Deville v. Marcantel*, courts "must

refrain from making credibility determinations or weighing the evidence" at summary judgment. 567 F.3d 156, 164 (5th Cir. 2009).

The district court's failure to recognize that Officer Heeth's contradictory testimony creates genuine issues of material fact was error. This Court should reverse and remand for trial, where a jury can assess the credibility of these conflicting accounts and resolve the material disputes they create.

**E. This Court Has Consistently Reversed District Courts for Similar *Tolan* Errors**

This Court has repeatedly reversed district courts for committing *Tolan* errors in qualified immunity cases. In *Winzer*, this Court emphasized: "Because this case comes to us on appeal from a summary judgment, we are obliged to review the record and construe the facts in the light most favorable to [Appellants], the nonmoving part[ies] in the court below." 916 F.3d at 468 n.2 (quoting *Sanders v. English*, 950 F.2d 1152, 1154 (5th Cir. 1992).

Similarly, in *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009), this Court held that "the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." The Court in *Deville* further instructed that courts must

29

"refrain from making credibility determinations or weighing the evidence." *Id.* at 164.

The district court's errors here are indistinguishable from those that warranted reversal in *Winzer* and other Fifth Circuit cases. The court resolved disputed facts, weighed competing evidence, and failed to draw reasonable inferences in Lambert's favor. These errors require reversal.

## III. THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT ON LAMBERT'S FIRST AMENDMENT RETALIATION CLAIM WHERE SHE PRESENTED COMPELLING OBJECTIVE EVIDENCE OF SELECTIVE ENFORCEMENT

### A. Legal Framework for First Amendment Retaliation Claims

To establish a First Amendment retaliation claim, a plaintiff must show: (1) she engaged in constitutionally protected activity; (2) the defendant's actions caused an injury that would chill a person of ordinary firmness from continuing to engage in the activity; and (3) the defendant's actions were substantially motivated by the protected activity. *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002).

In the context of retaliatory arrests, the Supreme Court in *Nieves v. Bartlett*, held that the existence of probable cause will generally defeat

a retaliatory arrest claim as a matter of law. 587 U.S. 391, 406 (2019). However, the Court recognized an important exception: where "objective evidence that [the plaintiff] was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Id*. at 407.

## B. *Gonzalez v. Trevino* Clarified and Broadened the Nieves Exception

In 2024, the Supreme Court decided *Gonzalez v. Trevino* ,, which directly addressed the Fifth Circuit's interpretation of the *Nieves* exception. The Court held that the Fifth Circuit had taken an overly narrow view of the exception. 602 U.S. 653, 658 (2024)

The Court in *Gonzalez* rejected the Fifth Circuit's requirement that plaintiffs produce virtually identical comparator evidence—that is, examples of identifiable people who engaged in the same conduct but were not arrested. *Id*. The Court emphasized that the *Nieves* exception was not meant to be so narrow as to be virtually impossible to satisfy. *Id*. Instead, the Court clarified that plaintiffs need only provide "objective evidence that [a plaintiff] was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Id*. at 655 (quoting *Nieves*, 587 U.S. at 407) . This objective

31

evidence can take many forms and does not require production of specific named individuals who committed identical conduct.

### C. Lambert Presented Exceptionally Strong Comparator Evidence Under *Gonzalez*

Lambert's case presents an exceptionally strong showing under the *Nieves/Gonzalez* framework. Officer Heeth admitted under oath that:

- Lambert is the **only** person she has ever arrested for disregarding the school drop-off route. **ROA.1100**.

- She has **never** given anyone even a written warning for this violation. **ROA.1099**.

- She has **never** issued a citation to anyone for this violation. **ROA.1099**.

- She had discretion in handling these situations. **ROA.1099**.

These admissions establish precisely the type of objective evidence the Supreme Court required in *Gonzalez*. Officer Heeth's testimony proves that others similarly situated to Lambert—parents who allegedly violated drop-off procedures—were not arrested, warned, or even cited. In fact, they received no enforcement action whatsoever. Lambert, by stark contrast, was arrested.

32

This is not a case where Lambert must speculate about how others were treated or identify specific individuals by name. Officer Heeth admitted the entire enforcement history: **zero warnings, zero citations, and one arrest—Lambert's.** This creates an inference of selective enforcement that easily satisfies *Gonzalez*'s standard for objective evidence.

### D. The Temporal Proximity Strengthens the Inference of Retaliation

The two-day gap between Lambert's formal complaint and her arrest provides additional support for an inference of retaliatory motive. Courts have consistently recognized that temporal proximity between protected activity and adverse action is probative of causation. *See Cass v. City of Abilene*, 814 F.3d 721, 728 (5th Cir. 2016).

Moreover, Officer Heeth admitted she knew about Lambert's complaint when she made the arrest. **ROA. 1098-1099.** This admission eliminates any question about whether Officer Heeth was aware of the protected activity. The combination of Officer Heeth's knowledge, the close temporal proximity, and the pattern of selective enforcement creates a compelling case of retaliation that should be decided by a jury, not resolved on summary judgment.

### E. The Chilling Effect Is Obvious

The City and Officers do not seriously dispute that Lambert engaged in protected activity by filing her complaint, nor can they dispute that being arrested in front of one's children for a supposed violation that has never resulted in even a warning for anyone else would chill a person of ordinary firmness from exercising First Amendment rights. Courts have recognized that far less severe consequences can have a chilling effect. The arrest, prosecution, and public humiliation Lambert suffered at the hands of Officer Heeth would certainly deter ordinary citizens from filing complaints against law enforcement officers.

### F. The Nieves Exception Applies Even if Probable Cause Existed

Critically, under *Nieves* and *Gonzalez*, Lambert need not prove the absence of probable cause to survive summary judgment. The exception exists precisely to address cases where probable cause may have existed but the officer selectively enforced the law against the plaintiff because of protected speech. That is exactly what the evidence shows here.

The Supreme Court created the exception because officers "typically exercise their discretion" and refrain from making arrests even when there is probable cause. *Nieves*, 587 U.S. at 406. The exception

34

ensures that officers cannot use minor violations as a pretext for retaliation. Officer Heeth's pattern of never arresting, citing, or warning anyone else for this violation, combined with her arrest of Lambert two days after Lambert complained, creates precisely the type of selective enforcement the exception was designed to address.

## IV. THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT ON LAMBERT'S FOURTH AMENDMENT CLAIM

The district court erred in granting summary judgment on Lambert's Fourth Amendment excessive force claim. This error is independently reversible and provides an alternative ground for denying Officer Heeth qualified immunity. Lambert presents two related but distinct Fourth Amendment theories, either of which defeats summary judgment:

First, under *Sauceda v. City of San Benito*, any alleged assault by Lambert occurred only after Officer Heeth initiated an unlawful seizure. Because the seizure was unlawful from its inception, Officer Heeth cannot rely on Lambert's response to that unlawful seizure as retroactive justification for the seizure itself. 78 F.4th 174 (5th Cir. 2023).

Second, even assuming arguendo that Officer Heeth had lawful grounds to initiate some form of enforcement action, the manner in which

35

she executed that seizure was objectively unreasonable under *Graham v. Connor*, 490 U.S. 386 (1989). Officer Heeth created substantial danger to Lambert and her children by climbing onto Lambert's stopped vehicle, reaching inside, grabbing Lambert by the hair and attempting to pull her out—which caused her foot to come off the brake while the vehicle was in drive, and attempting to forcibly extract Lambert—all for an alleged school drop-off routing preference that had never warranted even a warning to any other parent. **ROA.495-496, 532-533,1096-1097**

Both rights were clearly established in April 2021, and no reasonable officer could have believed Officer Heeth's conduct was lawful.

## A. Under *Sauceda v. City of San Benito*, Any Alleged Assault Occurred After Officer Heeth Initiated an Unlawful Seizure

### 1. Legal Framework: A Seizure Cannot Be Justified by Resistance That Occurs After the Seizure Begins

The Fifth Circuit's recent decision in *Sauceda* squarely addresses the temporal relationship between an officer's seizure and a suspect's alleged resistance. *Sauceda* holds that "[e]ven if an unlawful arrest becomes lawful moments later by virtue of the arrestee's resistance, there is no reason why the officer cannot be held liable for the unlawful part." *Id*. at 188.

36

The Court explained the fundamental principle: an officer's "application of physical force to the body of a person for the purpose of arresting him is itself an arrest—not an *attempted* arrest—even if the person does not yield." *Id.* at 187 (quoting *Torres v. Madrid*, 592 U.S. 306, 311 (2021)) (emphasis in original; internal quotation marks omitted). A Fourth Amendment seizure "occurs in one of two ways: either an officer applies physical force or an officer makes a show of authority to which an individual submits." *Id.* (citing *Arnold v. Williams*, 979 F.3d 262, 268 (5th Cir. 2020)).

Critically, *Sauceda* held that "a reasonable factfinder could still find that [the officer] made an unlawful [seizure] before [the plaintiff's] resistance." *Id.* The temporal sequence matters: if the officer initiates an unlawful seizure first, the suspect's subsequent resistance—even if it technically constitutes a crime—cannot retroactively provide probable cause for the initial unlawful seizure.

This principle flows from basic Fourth Amendment doctrine. An officer cannot commit an unlawful act, provoke a response, and then claim that response justified the original unlawful act. To hold otherwise would allow officers to bootstrap their way into probable cause by

37

initiating unconstitutional seizures and then arresting people for resisting those very seizures.

### 2. Officer Heeth Seized Lambert Before Any Alleged Assault Occurred

Under *Sauceda*, Officer Heeth seized Lambert at the first moment she applied physical force to Lambert's person or vehicle. The undisputed record evidence—including Officer Heeth's own admissions—establishes that Officer Heeth seized Lambert through multiple acts of physical force before any alleged vehicle movement that could constitute assault.

Officer Heeth admits that she struck Lambert's vehicle before any vehicle movement [**ROA.1096-1097**]; climbed onto Lambert's vehicle's running board while the vehicle was in drive [**ROA.1096-1097**]; reached into the vehicle while it was in drive and grabbed Lambert [**ROA.1096-1097**]; opened Lambert's door while the vehicle was in drive [**ROA.1096-1097**]; and attempted to forcibly remove Lambert from the vehicle while it was still in drive [**ROA.1096-1097**].

Each of these actions constitutes a Fourth Amendment seizure. Under *Torres v. Madrid,* "merely touching" is "sufficient to constitute an arrest." 592 U.S. at 311 (quoting *California v. Hodari D.*, 499 U.S. 621, 625 (1991)). When Officer Heeth struck Lambert's vehicle and then

climbed onto it, she effected a seizure. When she reached inside and grabbed Lambert, she effected a seizure. These were not attempted seizures; they were completed seizures regardless of whether Lambert "yielded" or remained in her vehicle.

Lambert testified that her vehicle moved only after Officer Heeth grabbed her by the hair and physically pulled her, lifting her from her seat and causing her foot to slip off the brake involuntarily. **ROA.495-496, 532-533**. Viewing this evidence in the light most favorable to Lambert—as the district court was required to do—Officer Heeth seized Lambert before any alleged assault occurred.

The temporal sequence is critical and undisputed: **First**, Officer Heeth struck Lambert's vehicle [**ROA.1096**]. **Second**, Officer Heeth climbed onto the running board [**ROA.1096**]. **Third**, Officer Heeth reached inside and grabbed Lambert [**ROA.1096**]. **Fourth**, Officer Heeth grabbed Lambert by the hair and physically pulled her from her seat, causing Lambert's foot to slip off the brake and resulting in involuntary vehicle movement. **ROA.495-496, 532-533**.

Under *Sauceda*, because the seizure (steps 1-3) preceded any alleged assault (step 4), Officer Heeth "cannot be justified" by conduct that occurred only after the seizure began. 78 F.4th at 188.

### 3. Officer Heeth Lacked Lawful Authority for This Initial Seizure

The critical question under Sauceda is whether Officer Heeth had lawful authority to initiate the seizure in steps 1-3 above. She did not.

#### a. The Alleged "Violation" Was Not a Criminal Offense or Even a Traffic Infraction

The alleged violation—using an alternate route during school drop-off—is not a criminal offense under Texas law. Officer Heeth cannot point to any Texas Penal Code or Transportation Code provision that criminalizes driving through a school drop-off area using a different route than preferred by school officials. At most, this was a school traffic management preference, not a legal violation.

Officer Heeth herself confirmed the discretionary nature of this alleged "violation." She admitted that she "had discretion in deciding how to handle traffic violations around the school." [**ROA.462-463**]. She further admitted that she "had discretion" in allowing certain vehicles to proceed even after the cutoff time. [**ROA.462-463**]. If Officer Heeth had discretion whether to enforce this at all, and if she had never enforced it

40

against anyone in her entire tenure, it strains credulity to claim it constituted a legal violation justifying physical force.

### b. Lambert Stopped When Signaled

Even accepting Officer Heeth's characterization of this as a traffic management issue, Lambert testified that she stopped her vehicle when Officer Heeth signaled to her. [**ROA.494**]. If Lambert complied with Officer Heeth's signal and stopped, then no violation occurred that would justify Officer Heeth climbing onto the vehicle and physically grabbing Lambert.

The district court improperly resolved this factual dispute against Lambert. Under *Tolan*, when a plaintiff testifies that she complied with an officer's orders, and that testimony is not "blatantly contradicted by the record," the court must accept it as true for summary judgment purposes. 572 U.S. at 657. Lambert's testimony is corroborated by: (1) Officer Heeth's admission that she struck Lambert's vehicle first [**ROA.1096**], suggesting Lambert had already stopped; (2) the absence of any evidence that Lambert was fleeing; and (3) Lambert's acquittal on all charges. [**ROA.451-454**].

41

### c. Climbing on a Vehicle and Reaching Inside Exceeded Any Lawful Authority

Even if some minimal enforcement action were justified—such as issuing a warning—Officer Heeth's decision to climb onto Lambert's stopped vehicle while it was still in drive—without any warning to Lambert—and reach inside to grab Lambert was categorically unreasonable and exceeded any lawful authority she possessed.

"The Fourth Amendment requires that searches and seizures be reasonable." *City of Indianapolis v. Edmond*, 531 U.S. 32, 37 ) (2000). "A search or seizure is ordinarily unreasonable in the absence of individualized suspicion of wrongdoing." *Id.* (citing *Chandler v. Miller*, 520 U.S. 305, 308 (1997)). Even for a traffic stop, the officer must have reasonable suspicion that a violation occurred. *Delaware v. Prouse*, 440 U.S. 648, 663 (1979). Here, Officer Heeth had no reasonable suspicion that Lambert committed any breach of the law, posed any threat, was fleeing, or required physical extraction from her vehicle.

Moreover, the manner of the seizure matters. Even if Officer Heeth had authority to stop Lambert's vehicle—which Lambert completed with [**ROA 463**]—she did not have authority to climb onto the car and attempt to remove the driver without any warning whatsoever forcibly. *See*

42

*Tennessee v. Garner*, 471 U.S. 1, 8 (1985) (observing the Fourth Amendment requires balancing "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests").

### d. *Officer Heeth Created the Very Danger She Claims Justified Her Actions*

Officer Heeth cannot claim her actions were justified by danger she created. By climbing onto a vehicle that was in drive and grabbing Lambert by the hair and pulling her, Officer Heeth caused any vehicle movement that occurred. Lambert testified that her foot came off the brake only because Officer Heeth grabbed her by the hair and was physically pulling her from her seat, causing an involuntary response as she was lifted from the brake pedal. **ROA.495-496, 532-533.**

If Lambert's vehicle moved, it moved because Officer Heeth climbed on it and pulled Lambert while the vehicle was in drive. Under *Sauceda*, this sequence—unlawful seizure first, alleged assault second—defeats Officer Heeth's probable cause defense.

### 4. This Court Should Apply *Sauceda*'s Temporal Analysis to Reverse the Grant of Summary Judgment

*Sauceda* compels reversal here. Just as the *Sauceda* court held that a factfinder could determine the officer "arrested [plaintiff] before

43

[plaintiff] applied any resistance," 78 F.4th at 187, so too could a factfinder here determine that Officer Heeth seized Lambert—by striking her vehicle, climbing onto it, and grabbing her—before Lambert's vehicle moved.

The district court failed to apply *Sauceda*'s temporal analysis. Instead, the court appears to have viewed Officer Heeth's conduct and Lambert's alleged assault as a single event, rather than a sequence of acts where the unlawful seizure preceded any response. This was error.

Under *Sauceda*, summary judgment should have been denied because a reasonable jury could find: (1) Officer Heeth seized Lambert by climbing on her vehicle and grabbing her; (2) this seizure was unlawful because Officer Heeth lacked reasonable suspicion that Lambert posed any threat or was committing any offense requiring physical intervention; (3) Lambert's vehicle moved only after this unlawful seizure began; and therefore (4) Officer Heeth cannot justify her unlawful seizure based on conduct that occurred only in response to that seizure.

**B. Even if the Initial Stop Was Lawful, the Manner of Execution Was Objectively Unreasonable Under Graham v. Connor**

Alternatively, even assuming Officer Heeth had lawful grounds to initiate some form of traffic enforcement—an assumption Lambert disputes—Officer Heeth's manner of executing that enforcement was objectively unreasonable under *Graham v. Connor*, 490 U.S. 386 (1989).

### 1. Legal Framework: The Graham Reasonableness Standard

The Fourth Amendment requires that the amount of force used by the officer be "objectively reasonable" under the circumstances. *Graham*, 490 U.S. at 397. Reasonableness depends on "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396.

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* However, this standard is not open-ended as it depends on "the facts and circumstances of each particular case." *Id.*

Importantly, "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth

45

Amendment." *Id.* (internal quotation marks omitted). But climbing onto a stopped vehicle, reaching inside while it is in drive, and attempting to forcibly extract a driver in front of her children is not "a push or shove"—it is significant physical force that created substantial danger to Lambert, her children, and other children in the school zone.

**2. Application of the Graham Factors Demonstrates Objective Unreasonableness**

Each Graham factor weighs decisively against Officer Heeth.

### a. The Alleged Violation Was Extraordinarily Minor

The first *Graham* factor—"the severity of the crime at issue"—weighs heavily in Lambert's favor. *Graham*, 490 U.S. at 396.

The alleged "violation" was using an alternate route during school drop-off. This is not a criminal offense under Texas law. It is not even a traffic infraction that would result in a citation. It is, at most, a school traffic management preference designed to maintain orderly flow during morning drop-off.

More telling, Officer Heeth admitted that in her entire tenure as school resource officer, she had never given a written warning to any parent or guardian for disregarding the school drop-off route [**ROA.1100**]; never given a citation to any parent or guardian for this

46

conduct [**ROA.1099**]; and never arrested anyone else—before or after Lambert—for this alleged violation [**ROA.1100**]

Lambert is the only person Officer Heeth ever arrested for this alleged violation. Indeed, Lambert is the only person Officer Heeth ever subjected to any enforcement action whatsoever—not even a verbal warning—for this conduct.

This enforcement history demonstrates that this alleged violation was not viewed as serious by Officer Heeth herself, by the Onalaska Police Department, or by school officials. If hundreds or thousands of parents used alternate routes during Officer Heeth's tenure (a reasonable inference given the multi-year time period), and exactly one was arrested while the rest were ignored, the severity of the alleged violation is effectively zero.

Compare this to cases where force was deemed reasonable: armed robbery, *see Scott v. Harris*, 550 U.S. 372 (2007); violent domestic assault, *see Rockwell v. Brown*, 664 F.3d 985 (5th Cir. 2011); flight from felony stop, *see Lytle v. Bexar County*, 560 F.3d 404 (5th Cir. 2009). The alleged violation here—using the "wrong" route at school drop-off—is not in the same universe as these offenses.

47

### b. *Lambert Posed No Threat Whatsoever*

The second *Graham* factor—"whether the suspect poses an immediate threat to the safety of the officers or others"—also weighs decisively for Lambert. *Graham*, 490 U.S. at 396.

Lambert posed zero threat. The undisputed facts establish:

1) Lambert was stopped in a school drop-off line [**ROA.86**];

2) Lambert was in a school zone surrounded by children and other parents during morning drop-off [**ROA.86**];

3) Lambert was belted in her seat with no ability to flee [**ROA.86**];

4) Lambert's two young children were in the backseat, visible to Officer Heeth [**ROA.86**];

5) Lambert had no weapon and made no threatening gestures [**ROA.421**];

6) Lambert was not fleeing; she was in a drop-off line waiting to drop off her children [**ROA.420**];

7) Officer Heeth suffered no injuries requiring medical treatment despite her claim of being "struck" [**ROA.22-23, 420**];

48

8) Officer Heeth continued working that day and worked a ball game that same evening, demonstrating she was not injured or threatened [**ROA.420**]; and

9) Lambert was ultimately acquitted of all charges after a jury heard all the evidence [**ROA.451-453**].

Officer Heeth cannot credibly claim she perceived Lambert as a threat when: (1) Lambert had stopped in the school drop-off line with her children in the car [**ROA 86.];** (2) Officer Heeth suffered no injuries whatsoever; and (3) Officer Heeth continued working immediately afterward without seeking any medical attention.

Moreover, Officer Heeth created any danger that existed. She climbed onto a vehicle that was in drive. She reached inside while the stopped vehicle. She attempted to pull Lambert out of the driver's seat while the vehicle was still in drive and while Lambert's children were in the backseat. These actions endangered Lambert, Lambert's children, and other children in the school zone. Lambert herself, did not endanger Officer Heeth.

c. *Lambert Did Not Actively Resist*

The third Graham factor—"whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight"—also favors Lambert. *Graham*, 490 U.S. at 396.

Lambert did not resist at all, much less "actively" resist. Lambert's testimony—which must be credited at summary judgment—is that she stopped when Officer Heeth signaled to her [**ROA.495-496**], and that her vehicle moved only after Officer Heeth struck it and grabbed her by the hair physically pulling her up from the seat, causing her foot to come off the brake involuntarily **ROA.495-496**].

An involuntary reflex response to being pulled while seated in a vehicle is not "active resistance" under *Graham*. *Cf. Ramirez v. Martinez*, 716 F.3d 369, 377 (5th Cir. 2013) (finding active resistance where plaintiff refused to comply with the officer's commands, became combative, and resisted arrest). Here, Lambert complied with Officer Heeth's signal to stop. She did not become combative. She did not refuse commands. Her foot slipping off a brake pedal while being pulled by an officer is a reflexive physical reaction, not volitional resistance.

Indeed, Texas law explicitly permits use of force to resist unlawful removal from a vehicle. *See* TEX. PENAL CODE § 9.31(b)(1)(B) ("a person is

50

justified in using force against another when . . . [she] knew or had reason to believe that the person against whom the force was used . . . unlawfully and with force removed, or was attempting to remove unlawfully and with force, [her] from [her] . . . vehicle"); § 9.31(c) (establishing that the use of force to resist an arrest or search is justified: (1) if, before the actor offers any resistance, the peace officer (or person acting at his direction) uses or attempts to use greater force than necessary to make the arrest or search; and (2) when and to the degree the actor reasonably believes is necessary to protect himself against the peace officer's (or other person's) use or attempted use of greater force than necessary).

Even if Lambert had intentionally resisted—which she did not—Texas law would have justified such resistance against Officer Heeth's immediate and unlawful attempt to remove her from her vehicle forcibly.

### 3.  Officer Heeth's Conduct Endangered Innocent Children

While not explicitly enumerated in *Graham*, this Court has recognized that endangerment of innocent third parties is a critical factor in assessing reasonableness of force. *See Lytle v. Bexar County Tex.*, 560 F.3d 404 (5th Cir. 2009) (collecting cases demonstrating courts consider risk to risk to innocent bystanders).

51

Officer Heeth's conduct placed three categories of children at serious risk:

**First**, Lambert's two young children were in the backseat during the entire encounter. [**ROA.86**]. They watched their mother being grabbed and pulled by a police officer. More dangerously, they were passengers in a vehicle that Officer Heeth caused to move unpredictably by pulling on their mother while the car was in drive. If Lambert's foot had come completely off the brake—or if she had inadvertently hit the accelerator due to Officer Heeth's pulling—Lambert's children could have been injured or killed.

**Second**, other children and parents in the school drop-off area were at risk. This incident occurred during morning drop-off when children were entering and exiting vehicles throughout the area. [**ROA.86-87**]. A vehicle moving unpredictably because an officer is pulling the driver could easily strike pedestrians (including parents, teachers, and children).

**Third**, children inside the school were placed at risk if the vehicle had accelerated toward the school building due to Officer Heeth's interference with Lambert's ability to control the vehicle.

52

Officer Heeth's decision to climb onto Lambert's stopped vehicle and attempt to pull her out without warning and causing her foot to come off the brake—in a school zone, during drop-off, with children everywhere—demonstrated reckless disregard for child safety. No reasonable officer would believe this conduct was appropriate given the extraordinary risks and the trivial nature of the alleged violation.

**4. The Totality of Circumstances Demonstrates Objective Unreasonableness**

Viewing the *Graham* factors together, no reasonable officer could have believed Officer Heeth's conduct was constitutional:

a. A trivial, non-criminal alleged violation (school drop-off routing)

b. A suspect posing zero threat (mother in school drop-off line with children in car)

c. No resistance (involuntary foot slippage after being pulled)

d. Significant force creating substantial danger (climbing on a stopped vehicle, reaching inside while in drive, attempting forcible extraction)

e. Children present and endangered (Lambert's children in backseat, other children in school zone)

53

f.  No injury to officer (continued working same day)

g.  Suspect ultimately acquitted (jury rejected assault charges)

This is not a close case. The disproportion between the alleged violation (school drop-off routing preference) and Officer Heeth's response (climbing on Lambert's stopped vehicle, without any instructions or warning, to forcibly extract driver in front of children) is stark.

## C. Officer Heeth's Own Admissions Defeat Qualified Immunity

Officer Heeth's deposition testimony and discovery responses establish undisputed facts that no reasonable officer could view as lawful. She admitted:

1.  She climbed onto Lambert's vehicle's running board while the vehicle was in drive [**ROA.1096**];

2.  She reached into the vehicle while it was in drive [**ROA.1096**];

3.  She opened Lambert's door while the vehicle was in drive [**ROA.1096**];

4.  She attempted to forcibly remove Lambert from the vehicle while it was still in drive [**ROA.1097**];

54

5. Lambert's two minor children were in the backseat during all of this [**ROA.1097**];

6. She suffered no serious bodily injury—indeed, no injury requiring any medical treatment whatsoever [**ROA.1098**];

7. She continued working that same day and worked a ball game that evening [**ROA.420];**

8. She had never arrested, cited, or even warned anyone else for this alleged violation in her entire tenure as school resource officer [**ROA.1100**];

9. She knew about Lambert's complaint against her before this incident [**ROA.1098**].

These admissions are fatal to Officer Heeth's qualified immunity defense. They establish that Officer Heeth's conduct was objectively dangerous (climbing on the stopped vehicle that was still in drive); Lambert posed no actual threat (no injuries to Officer Heeth, children in car, school drop-off setting); the alleged violation was trivial (no one else ever even warned); Officer Heeth had discretion not to enforce (could have let Lambert proceed); and Officer Heeth's claimed justification lacks credibility (continued working same day with no medical treatment).

No reasonable officer would believe that climbing onto vehicle to forcibly extract a mother in front of her children—without warning—for an alleged school drop-off routing preference that had never warranted even a verbal warning to hundreds of other parents—was constitutional.

### D. Officer Heeth's Body Camera Policy Violation Compounds the Constitutional Violations

Officer Heeth violated her department's body camera policy by failing to wear or activate her camera during this incident [**ROA.670**], depriving this Court of objective video evidence. The City of Onalaska Police Department policy requires officers to "utilize body-worn cameras to record all contacts with citizens in the performance of official duties" and to document reasons for failing to do so. [**ROA.670**].

This violation is significant for three reasons:

**First**, it demonstrates Officer Heeth's awareness that her conduct was problematic. Officers who follow proper procedures typically wear required equipment. The absence of body camera footage in an incident Officer Heeth knew would result in felony charges suggests consciousness of wrongdoing.

**Second**, it deprives this Court of objective evidence that might have resolved factual disputes. In *Scott v. Harris*, 550 U.S. 372 (2007)

56

the Supreme Court relied on video evidence that "quite clearly contradicted" the plaintiff's version of events. *Id*. at 380. Here, there is no video because Officer Heeth violated her department's policy. She cannot benefit from the absence of evidence she was required to create.

As Justice Sotomayor observed in her *Nieves v. Bartlett* dissent, "[m]ore than ever before, an audiovisual record of key events is now often obtainable" through body cameras, creating reliable contemporaneous evidence. 587 U.S. 391, 427 (2019) (Sotomayor, J., dissenting). Where such objective evidence should exist but does not—due to an officer's policy violation—courts cannot use that absence to credit the officer's version over the plaintiff's testimony.

**Third**, in the absence of body camera footage, this Court must credit Lambert's testimony under *Tolan*, and that testimony shows clear constitutional violations. Officer Heeth struck Lambert's vehicle first. Officer Heeth climbed onto the vehicle. Officer Heeth pulled Lambert, causing her foot to slip. These acts preceded any alleged assault, as Sauceda requires the Court to consider.

The absence of body camera footage—due to Officer Heeth's own policy violation—cannot be used to create ambiguity that benefits Officer

57

Heeth. To the contrary, it reinforces that Lambert's testimony must be credited at summary judgment.

### E. These Rights Were Clearly Established in April 2021

Qualified immunity shields officers only if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Both rights Lambert asserts—freedom from unlawful seizure and freedom from excessive force—were clearly established in April 2021.

#### 1. The Right to Be Free from Seizure Without Reasonable Suspicion

It was clearly established in April 2021 that officers must have at least reasonable suspicion to seize a person. *Terry v. Ohio*, 392 U.S. 1, 21 (1968). It was clearly established that officers cannot use significant physical force without legal justification. *Graham*, 490 U.S. at 395-97.

It was clearly established that officers cannot climb onto vehicles and physically grab occupants without reasonable suspicion that the occupant poses a threat or is committing a serious offense. *See Tennessee v. Garner*, 471 U.S. at 11 (holding officers may not use force unless

suspect poses threat); *Brosseau v. Haugen*, 543 U.S. 194, 197 (2004) (per curiam) (applying *Garner* to force less than deadly force).

No reasonable officer in April 2021 could have believed that jumping onto a stopped vehicle in a school drop-off line to forcibly extract a mother—without warning and in front of her children (also in the vehicle)—was lawful when the alleged violation was merely using an alternate route to drop off children at school. The constitutional line was clearly drawn: significant force is unreasonable for trivial, non-threatening violations.

### 2. The Right to Be Free from Excessive Force for Minor Violations

It was clearly established in April 2021 that the degree of force must be proportional to the severity of the suspected offense and the threat posed. *Graham*, 490 U.S. at 396. Multiple Fifth Circuit cases predating April 2021 held that force was excessive when used for minor offenses where the suspect posed no threat. See, e.g., *Hanks v. Rogers*, 853 F.3d 738, 749 (5th Cir. 2017) (holding that an officer's use of force during a traffic stop may be excessive where the suspect does not pose an immediate threat to the officer's or others' safety).

Here, Officer Heeth used significant force—climbing onto Lambert's stopped vehicle, grabbing Lambert by the hair and lifting her body off the brakes while the car was in drive, attempting forcible extraction—for an alleged violation (school drop-off routing) that: (1) was not a criminal offense; (2) had never resulted in even a warning to any other parent; (3) involved a suspect (Lambert) who posed no threat; (4) occurred in front of children; and (5) created danger to those children in the vehicle. **ROA 86,533,1096-1097.**

No reasonable officer could have believed this conduct was constitutional. The law was clearly established: you cannot use force that endangers children to address a trivial, non-criminal, non-threatening school drop-off routing preference.

### 3. Officer Heeth Had Fair Warning Her Conduct Was Unconstitutional

"The salient question" for qualified immunity "is whether the state of the law" at the time "gave fair warning that [the officer's] alleged [conduct] was unconstitutional." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

Officer Heeth had fair warning on multiple fronts:

**Basic Fourth Amendment principles**: The Supreme Court's decisions in *Graham*, *Garner*, and *Terry*—all decided decades before

April 2021—clearly established that force must be proportional and justified;

**Fifth Circuit precedent**: This Court's decisions consistently held that force is excessive when disproportionate to the threat and severity of offense;

**Common sense**: No reasonable officer could believe that climbing onto a stopped vehicle in the middle of a roadway to extract a driver without warning in front of children—for a school drop-off routing preference—was reasonable;

**Department training**: Basic police training emphasizes officer safety, de-escalation, and proportionality; Officer Heeth's conduct violated all three principles;

**Officer Heeth's own enforcement history**: Officer Heeth had never enforced this alleged violation against anyone else, demonstrating she knew it did not warrant arrest or even a warning.

The law clearly established that Officer Heeth's conduct was unconstitutional. She had fair warning. She proceeded anyway. Qualified immunity does not shield her.

### F.  Conclusion on Fourth Amendment Claims

The district court erred in granting summary judgment on Lambert's Fourth Amendment claims. Under *Sauceda,* any alleged assault occurred after Officer Heeth initiated an unlawful seizure, precluding Officer Heeth from using that alleged assault to justify her unlawful seizure. Under *Graham,* even if some enforcement action were justified, Officer Heeth's manner of execution—climbing on a stopped vehicle, reaching inside while in drive, attempting forcible extraction of a mother in front of children without warning—was objectively unreasonable for an alleged school drop-off routing preference.

Both rights were clearly established, and no reasonable officer could have believed Officer Heeth's conduct was lawful. This Court should reverse the grant of summary judgment and remand for trial.[1]

---

[1] The district court granted summary judgment to Officer Heeth on qualified immunity grounds and did not reach Lambert's *Monell* claims against the City of Onalaska. [**ROA.1233**]. Should this Court reverse and find that Officer Heeth violated Lambert's constitutional rights, Lambert's *Monell* claims should be remanded for consideration by the district court. Lambert presented substantial evidence that Chief of Police Jessica Stanton, a final policymaker for the City, ratified Officer Heeth's conduct after being fully informed of the circumstances, including through a perfunctory 15-day investigation that failed to interview key witnesses and concluded with an "unfounded" determination endorsing Officer Heeth's version of events. [**ROA.397-431**]. This presents an issue under *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 169 (5th Cir. 2009). The City also permitted Officer Heeth to

## CONCLUSION

For the foregoing reasons, this Court should reverse the district court's grant of summary judgment and remand this case for trial. Lambert presented powerful evidence that Officer Heeth retaliated against her for filing a complaint and used objectively unreasonable tactics in effectuating an arrest. Officer Heeth's own admissions—that she never arrested, cited, or warned anyone else for this conduct, that she arrested Lambert just two days after Lambert complained, and that she employed dangerous tactics while children watched—create genuine issues of material fact that must be resolved by a jury.

SUBMITTED BY:
S/Brandon Grable

---

violate multiple departmental policies without consequence and allowed her to participate in investigating her own conduct. These facts present the type of "extreme factual situation" supporting municipal liability through ratification. *See Young v. Bd. of Supervisors*, 927 F.3d 898, 904 (5th Cir. 2019). Because municipal liability depends on an underlying constitutional violation, *see City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986), the district court should address these claims in the first instance following any reversal on individual liability.

Grable, P.L.L.C.
12451 Starcrest Drive
San Antonio, TX 78216

## CERTIFICATE OF SERVICE

I certify that on October 27, 2025, the foregoing document was filed with the Court's CM/CEF electronic filing system, and that a copy of said document was served upon all parties of record, via electronic service.

S/Brandon Grable

## CERTIFICATE OF COMPLIANCE

1.  This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) and 5th CIR. R. 32.1:  this document contains 10,220 words.

2.  This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5), and 5th CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in 14-point Century Schoolbook.

<u>S/Brandon Grable</u>